■ In the Matter of BENJAMIN MANCINI, Appellant, v DOREEN BOROWICZ, Respondent. [705 NYS2d 450] —Peters, J. Appeal from an order of the Family Court of Saratoga County

(Nolan, Jr., J.), entered July 26, 1999, which, *inter alia*, granted respondent's application, in a proceeding pursuant to Family Court Act article 4, to modify her child support obligation.

As detailed in our previous review of this matter (256 AD2d 713), the parties incorporated but did not merge a 1993 separation agreement, along with its 1995 amendment, into a judgment of divorce which set forth their respective child support obligations including an agreement by respondent to pay a proportionate share of tuition and day care expenses.

On March 27, 1997, primary physical custody of the child was transferred to petitioner and respondent agreed, *inter alia*, to pay tuition and child care expenses "in a ratio proportionate to their respective incomes". Shortly thereafter, petitioner sought an upward modification of support which was denied by Family Court upon its application of the proportional offset formula rather than the Child Support Standards Act (Family Ct Act § 413) (hereinafter CSSA). Upon appeal, we remitted the matter to Family Court for the proper application of the CSSA (256 AD2d 713, *supra*). During the pendency of the appeal, petitioner filed two violation petitions against respondent. Respondent thereafter cross-petitioned for a downward modification.

Following a trial on these matters, the modification petition was dismissed and, by order dated August 4, 1998, respondent was required to make payments toward an accumulated arrearage of $1,000.78 comprised of tuition, day care, medical expenses and child support. On October 6, 1998, petitioner filed a violation petition which prompted respondent to seek a downward modification of support based upon her impending layoff scheduled for December 1999. Petitioner sought dismissal of the petition alleging, *inter alia*, no change of circumstances.

On April 22, 1999, the parties, with counsel present, signed an in-court stipulation wherein respondent agreed to make payments on her accumulated arrearages concerning medical, tuition, and child care expenses in the amount of $841.82. Following a hearing on the remaining petitions, and in accordance with the direction of this Court (*see*, 256 AD2d 713, *supra*), the Hearing Examiner applied the CSSA to the parties' 1998 gross incomes (petitioner's 1998 gross income from salaried employment being $37,601 and respondent's unemployment benefits annualizing to $12,532) and concluded that although respondent's share was $39 per week, given her prolonged unemployment, such amount would exceed the self-support reserve, as would an order requiring additional contribution for tuition

and day care costs. Accordingly, such amount was further reduced to $26 per week in accordance with Family Court Act § 413 (1) (d). The court also ordered that upon her employment, but in any event no later than August 1, 1999, support payments of $88 per week—the amount designated under the CSSA—would resume.* Upon Family Court's denial of petitioner's objections, this appeal ensued.

As the party seeking modification, respondent carried the burden of establishing that an unanticipated or unreasonable change of circumstances had occurred (see, *Merl v Merl*, 67 NY2d 359, 362; *Matter of Cook v Bornhorst*, 230 AD2d 934, 935). In connection therewith, she testified that in 1996 and a portion of 1997, while residing in Connecticut, she earned approximately $40,000 per year while employed as an alcoholism counselor until the position was eliminated in early 1997. Prior thereto, she held two separate positions which paid approximately $29,000 to $30,000 per year. Upon her move to Saratoga County, however, she applied for several counseling and human resource positions and was periodically employed through a variety of employment agencies. In June 1998, she commenced a six-month position with Camary Statewide Services as Director of Human Resources with an annual salary of $25,000. Although she testified that she was aware of the temporary nature of the position, management led her to believe that the position would become permanent—testimony which was supported by documentary evidence from Camary's chief executive officer. From the time of her departure in December 1998 until the hearing in May 1999, she did not use an employment agency but responded to several advertisements. At the time of the hearing, she had various prospects for employment with salaries ranging from $20,000 to $24,000.

Notwithstanding petitioner's assertions that respondent's lack of permanent employment resulted from her own laxity in failing to pursue a permanent position while employed by Camary, we find sufficient record evidence to support the determination that respondent's current employment status constituted an unanticipated change in circumstances warranting a temporary downward modification of support (see, *Matter of Valek v Simonds*, 174 AD2d 792, 793; compare, *Matter of Bouchard v Bouchard*, 263 AD2d 775; *Matter of Diamond v Diamond*, 254 AD2d 288; *Matter of Sutphin v Dorey*, 233 AD2d 698). As to the conditional nature of the order, we find no error

* The figure is based on the application of the CSSA formula to the parties' combined income for 1998, which includes an income of $29,000 imputed to respondent pursuant to a January 1998 order (James, J.).

since the Hearing Examiner was in the best position to hear and assess the testimony and to fashion an appropriately limited result which we note did not necessitate a further petition once respondent's employment resumed. Concerning the income imputed to respondent regardless of her employment status after August 1, 1999, we again find no error as the Hearing Examiner properly exercised his discretion based upon her prior work history and ability to provide support (*see, Matter of Ciampi v Sgueglia*, 252 AD2d 755; *Matter of Lutsic v Lutsic*, 245 AD2d 637; *Matter of Susan M. v Louis N.*, 206 AD2d 612).

Turning to the remaining support issues, we note that respondent's support obligation under the CSSA was based upon her unemployment income for the period between December 3, 1998 until no later than August 1, 1999. This amount was further reduced pursuant to Family Court Act § 413 (1) (d) to $26 per week since the amount previously calculated would place her below the self-support reserve. Petitioner does not challenge the amount, only the suspension of respondent's obligations under the March 1997 stipulation of settlement, reaffirmed in the April 1999 order, where she agreed to pay her proportionate share of unreimbursed medical, tuition and child care expenses. Based upon our reasoning in *Matter of Oropallo v Tecler* (263 AD2d 716), we agree that it was error to suspend the arrearages stipulated and agreed to by respondent in the April 1999 order as well as those additional expenses incurred thereafter pursuant to the March 1997 stipulation of settlement. As to the income that should be attributed to respondent in order to properly calculate her proportionate share, we find that her annualized unemployment benefits of $12,532 should be used for the period from December 3, 1998 until the earlier of either respondent's employment or August 1, 1999.

Cardona, P. J., Mercure, Graffeo and Mugglin, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as appears to permanently waive or at least suspend arrearages agreed to by respondent for unreimbursed medical, child care and tuition expenses; respondent is to remain obligated for that amount, further including her proportionate share of child care and tuition expenses as agreed to in the March 1997 stipulation calculated on the basis of her unemployment income if not employed prior to August 1, 1999; and, as so modified, affirmed.